IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

BRENDA WOOD,

    Defendant.

Case No. 14-20065-01-JAR-JPO

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Brenda Wood's Motion to Sever Counts (Doc. 70) and the Government's related Notice of Rule 404(b) Evidence (Doc. 109). Defendant seeks to sever the offenses charged in the Superseding Indictment[1] into three trials: (1) Counts 1-5 which charge bank fraud offenses occurring from 2006 to 2009; (2) Counts 6-10 which charge ERISA offenses; and (3) Counts 11-26, which charge post-indictment offenses in 2014, including bank fraud, wire fraud, aggravated identity theft, and committing a felony while on pre-trial release.

The Government contends that Counts 6-10 are properly joined with Counts 1-5 and 11-26, and that joinder of Counts 11-26 will not result in unfair prejudice. The Government further argues that the evidence of these twenty-six counts is inextricably intertwined, or alternatively is properly admissible evidence under Rule 404(b) such that severance would be futile.

After consideration of the parties' filings, the Court is now prepared to rule on the motion. For reasons discussed more fully below, the Court concludes that Counts 6-10 are not properly joined with Counts 1-5 and 11-26, and should be severed. The Court further concludes

---

[1] Doc. 53.

1

that Counts 1-5 are properly joined with Counts 11-26. Thus, Defendant's motion to sever is granted in part. The trial of Counts 6-10 will be severed from the trial of the other counts.

## I. The Superseding Indictment

### A. Counts 1-5 (Bank Fraud)

The Superseding Indictment charges bank fraud in Counts 1-5. Each of these counts charges that Defendant executed or attempted to execute a scheme to defraud Farmers Bank & Trust, N.A. ("Farmers Bank") from about June 2006 to March 2009. The scheme involved Defendant: (1) fraudulently obtaining a loan in 2006 for her business, Riverview Crossings LLC, to purportedly purchase land in Bonner Springs, Kansas ("Bonner Springs property") from another of her businesses, G&W Investments LLC; (2) fraudulently obtaining a loan in 2007 for her businesses Professional Cleaning and Innovative Building Services, ("PCI"), and Action Real Estate to purchase a piece of real estate in Basehor, Kansas ("Basehor property"); (3) fraudulently obtaining a $350,000 line of credit for PCI in 2008 and making fraudulent draw requests on that line of credit; (4) fraudulently obtaining a master loan agreement in 2009 that renewed, refinanced and modified seven loans to her businesses, including the aforementioned loans for the Bonner Springs property as well as an increase in the loans to pay property taxes on the Bonner Springs property; and (5) in 2008 and 2009, fraudulently diverting funds in Farmers Bank's escrow account to Defendant and another of her businesses, Action Real Estate, rather than paying vendors and property taxes owed by PCI.

### B. Counts 6-10 (Theft from an Employee Benefit Program; Willful Violation of ERISA)

The Superseding Indictment charges that in 2010, Defendant established a 401(k) employee pension and benefit plan subject to ERISA for employees of PCI and another of her businesses, Commercial Development and Management, LLC ("CDM"). Thereafter, from May

2011 to August 2012, Defendant: (1) embezzled or willfully converted employee pension funds; (2) failed to file annual financial reports with the Secretary of Labor for calendar years 2011-2013; and (3) failed to publish the Summary Plan Description to PCI pension plan participants.

### C. Counts 11-26 (Bank Fraud, Wire Fraud, Aggravated Identity Theft, Check Kiting and Committing a Felony While on Release)

The Superseding Indictment charges that in 2014, Defendant committed bank fraud and aggravated identity theft by using social security numbers not assigned to her to fraudulently open four business checking accounts for three of her businesses, Everything Real Estate, 20 W. 9th LLC and Shelter Management, LLC at three financial institutions, Credit Union of Leavenworth County, National Bank of Kansas City, and Brotherhood Bank and Trust.  The Superseding Indictment further charges that in 2014 Defendant committed wire fraud and aggravated identity theft by using social security numbers not assigned to her, to obtain loans from Merchant Advance Express and US Funding, as well as an American Express credit account.  The Superseding Indictment also charges that Defendant committed bank fraud in 2014 through a check kiting scheme involving three financial institutions, Capitol Federal Savings Bank, Intrust Bank and Credit Union of Leavenworth County, and bank accounts of a number of Defendant's businesses, including PCI Unlimited, Inc., Everything Real Estate, Shelter Management, LLC and Action Real Estate.  The Superseding Indictment further charges that Defendant committed two of the counts of bank fraud and two of the related counts of aggravated identity theft, all felony crimes, while she was on pretrial release in this case.

## II.   Joinder of Counts 6-10 (ERISA) with Counts 1-5 and 11-26

Defendant argues that Counts 6-10 which charge embezzlement of pension plan funds, failure to file annual reports, and failure to publish the Summary Plan to plan participants, are improperly joined with Counts 1-5 and 11-26.  Fed. R. Crim. P. 8(a) allows the Government to

3

join offenses in a single indictment if the offenses are (1) of the same or similar character, (2) based on the same act or transaction, or (3) part of a common scheme or plan.[2] The Tenth Circuit "construe[s] Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system."[3]

Counts 6-10, the ERISA charges, are not the same act or transaction as the other charges. But, the Government argues that they are of the same or similar character as the other charges. The Court disagrees. The bank fraud, wire fraud and aggravated identity theft counts involve fraudulent use of social security numbers, submission of fraudulent documents to procure loans and extension of a line of credit from lenders or credit from a credit card provider, check kiting among bank accounts, and/or fraudulently diverting bank escrow monies and checks for tax payments to Defendant's personal bank account. The ERISA counts, on the other hand, charge diversion of monies from PCI's pension plan, failure to publish a plan summary to participants and willful failure to file annual reports with the Secretary of Labor.

The Government does not explain how these are similar other than to note that the bank fraud counts involved submission of fraudulent documents and the ERISA counts involve failure to submit documents to conceal embezzlement. The Court agrees with Defendant's characterization of these ERISA charges as arising in a regulatory context, and although they are financial crimes in the general sense, a showing of similarity requires more than a showing "at a level of generality so high as to drain the term of any real content."[4]

The Government also argues that Counts 6-10 are properly joined because they are part of a common scheme and plan to commit the bank fraud and other crimes, all with the objective

---

[2] Fed. R. Crim. P. 8.

[3] *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997) (citing *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995)).

[4] *United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996).

4

of diverting monies to Defendant.  In fact, the Government describes Defendant as conducting a "continuous criminal enterprise" from 2006 to 2014, utilizing a number of businesses, to divert money to herself and to prop up her failing businesses.  The Government further points to Defendant's 2012 bankruptcy filing[5] as evidencing her dire financial circumstances, with assets of less than $1,000,000 and liabilities between $10,000,000 and $50,000,000.  But these allegations are not in the Superseding Indictment, and generally, the criteria for joinder must be met on the face of the indictment. [6]

But the only common theme the Government articulates is Defendant's motive to enrich herself and to keep her businesses afloat.  At that level of generality, a bank robbery, or sale of controlled substances, or any number of crimes committed to obtain money would satisfy the common scheme or plan requirement of Rule 8(a).  While joinder is to be liberally construed, the counts must be logically connected in some way, beyond the generality of a motive to illegally obtain money.   One such logical connection is when one disparate charge involves conduct that supports, encourages, or abets the other disparate charge.  Thus, for example, joinder has been found proper of a counterfeiting charge with a charge of planning to attack a federal building, because the intent was to fund the attack with the proceeds of the counterfeiting scheme.[7]

Here, the Superseding Indictment provides no logical connection between Counts 6-10 and the other charges.  There is no indication, for example, that Defendant used the proceeds of bank fraud or wire fraud to fund the pension plan.  Nor is there any indication that Defendant used the pension plan proceeds to fund the check kiting scheme, or any of the other schemes and

---

[5] *In re Brenda Wood*, No. 12-22262 (Bankr. D. Kan. 2012).

[6] *See United States v. Hill*, 786 F.3d 1254, 1272 (10th Cir. 2015) (finding based on the indictment that joinder of six robberies proper because indictment tied them together in one conspiracy); *United States v. Fenton*, 367 F.3d 14, 21 (1st Cir. 2004) ("A plausible basis for the joinder of multiple counts ordinarily should be discernible from the face of the indictment.").

[7] *United States v. Nettles*, 476 F.3d 508, 516 (7th Cir. 2007).

crimes charged. At most, the Government argues in its Notice of Rule 404(b) Evidence[8] that there were checks from the CDM payroll account to Farmers Bank, as well as to G&W Investments and other businesses owned by Defendant. It is not clear what the Government is arguing. But, to the extent it argues that 401(k) contributions were diverted to payments to Farmers Bank or other businesses for Defendant's benefit, again, a common motive of diverting money for Defendant's personal use or to keep her other businesses afloat is not a sufficient connection to support joinder of the charges.

Moreover, although the Government claims that the evidence is inextricably intertwined, beyond that conclusory statement, there is no indication that there is any overlap of evidence with respect to Counts 6-10 and the other charges, nor any connection between Counts 6-10 and the other counts. For the reasons discussed above, that is too generic of a similarity to justify joinder, and does not constitute evidence of a common scheme or plan.

For these reasons, the Court concludes that Counts 6-10 are not properly joined under Rule 8 and should be severed for trial. Moreover, for the reasons outlined below, evidence of Counts 6-10 is not proper Rule 404(b) evidence in the trial of Counts 1-5 and/or Counts 11-26.

### III.    Joinder of Counts 1-5 (Bank Fraud) with Counts 11-26

Defendant also moves to sever Counts 1-5, which charge bank fraud involving Farmers Bank and a number of Defendant's businesses, from Counts 11-26, which charge bank and wire fraud, as well as aggravated identity theft and commission of felony while on pretrial release. The conduct in Counts 11-26 occurred in 2014, after Defendant was indicted on Counts 1-10.

Defendant acknowledges that the bank fraud charged in Counts 1-5 and the fraud and aggravated identity theft charged in Counts 11-25 and the related commission of a felony

---

[8] Doc. 109.

charged in Count 26, are of the same or similar nature, thus satisfying that basis for Rule 8(a) joinder.[9] But, Defendant argues that joinder of Counts 1-5 with the "post-indictment" conduct charged in Counts 11-26 will result in unfair prejudice.

Even if joinder is proper under Rule 8, joinder is subject to the limitation of Fed. R. Crim. P. 14, which states: "If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts."[10] Prejudice to the defendant by joinder may arise if: (1) the defendant may become embarrassed or confounded in presenting separate defenses, (2) a jury may use evidence of one crime to infer criminal disposition in another, or (3) the jury may cumulate evidence."[11] If joinder under Rule 8 is based on the same or similar character of the offenses, the Tenth Circuit has cautioned that "the prejudice to the defendant is more likely since proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of a general criminal disposition or propensity to commit crime."[12] A district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and delay of separate trials.[13] The defendant bears a heavy burden of showing real prejudice from the joinder of the counts.[14] The decision whether to sever counts as prejudicial rests in the sound discretion of the trial judge.[15]

Defendant has failed to bear her heavy burden of showing real prejudice from the joinder of Counts 1-5 with Counts 11-26. She argues that joinder of the post-indictment offenses with

---

[9] *See* Doc. 70 at 3–4. Defendant does not challenge joinder of Counts 1-5 and Counts 11-26 under Rule 8.

[10] Fed. R. Crim. P. 14.

[11] *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998) (citing *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964)); *United States v. Dickey*, 736 F.2d 571, 591 (10th Cir. 1984).

[12] *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir.1993).

[13] *Dickey*, 736 F.2d at 590.

[14] *United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993).

[15] *United States v. Dixon*, 546 F. Supp. 2d 1198, 1206 (D. Kan. 2008).

the pre-indictment offenses is prejudicial because "[a]ny defense she puts forth to the original bank fraud or the ERISA violations will necessarily be compromised by the very allegations in the later counts, especially Count 26—committing a felony while on pretrial release pending the trial on the original indictment."[16]  Beyond that conclusory statement, Defendant offers nothing to show that the jury will not be able to compartmentalize the evidence, and follow the Court's instructions that: Defendant is presumed innocent on all charges (whether based on pre-indictment or post-indictment conduct) and that the jury is to consider, deliberate and decide each charge separately.  Defendant offers nothing to show that the mere fact that she is charged with a new offense (Count 26) that is based on other charged conduct occurring while on pretrial release, will render a jury unable to follow the law in rendering its verdict.

Defendant offers two other conclusory statements in support of her assertion of unfair prejudice.  She states that there is a danger of unfair prejudice when there is a disparity in the strength of the evidence, and that her defenses to the original charges and the weakness of evidence on Counts 1-5 "will be altered by the very existence of the new allegations."[17]  But, Defendant offers no more that would convince the Court that the evidence of Counts 1-5 is substantially stronger or weaker than the evidence of Counts 11-26.

One basis for severance due to prejudice is if the defendant is unable to present separate defenses.  Defendant claims she may want to exercise her right to testify on some charges, but exercise her right to not testify on others.  While the Court cannot expect the defendant to disclose trial strategy, at the same time, she must show that it is likely she would testify on the charges.  Indeed, she must make "a convincing showing that [s]he has both important testimony

---

[16] Doc. 70 at 8.

[17] *Id.*

8

to give concerning one count and strong need to refrain from testifying on the other."[18]  The defendant must present sufficient information about the nature of her testimony and her reasons for not testifying on the other charge or charges to enable the court "intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."[19]

Defendant asks for an opportunity to make this showing *ex parte*.  Notably, Defendant's motion specifically mentions that she may want to testify on the ERISA charges, but does not state that she may want to testify on any other charges.  And, because the Court has severed the ERISA charges, her request to make an *ex parte* showing on those charges is moot.

But, to the extent Defendant is requesting to make an *ex parte* showing that she would testify on any of Counts 1-5 or, alternatively, on any of Counts 11-26, the Court finds no need to grant Defendant leave to make such an *ex parte* showing.  Even if the Court were to sever Counts 1-5 from Counts 11-26, allowing Defendant to testify on some but not all charges, the Government would nonetheless be able to cross-examine Defendant about the other charges she chose not to testify about.  This is so, because evidence of Counts 1-5 would properly be admitted as Rule 404(b) evidence of Counts 11-26, and vice versa.  Thus, severance would be futile.

### IV.     Rule 404(b) Evidence

The Government filed a Notice of Rule 404(b) Evidence, to which Defendant responded. In its notice, the Government argues that evidence of any of the charges is properly admitted in a trial of any other charges as 404(b) evidence.

---

[18] *United States v. Valentine*, 706 F.2d 282, 291 (10th Cir. 1983) (quoting *Baker v. United States*, 401 F.2d 958 (D.C. Cir. 1968)).

[19] *Id.*

When applying Fed. R. Evid. 404(b), courts distinguish between evidence that is extrinsic or intrinsic to the charged crime.[20] Rule 404(b) does not cover evidence that is considered intrinsic to the crime charged.[21] Other acts evidence is intrinsic if it is part and parcel of the proof of the offense charged,[22] it is so "inextricably intertwined" with the crime charged that testimony concerning the charged act "would have been confusing and incomplete without mention of the prior act,"[23] or both acts are part of a single criminal episode.[24]

Rule 404(b) applies to evidence of acts extrinsic to the crime charged[25] and states:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. [It] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.[26]

Case law instructs courts to consider four factors in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests.[27]

Evidence is admitted for a proper purpose if allowed for one or more of the enumerated purposes in Rule 404(b). The enumerated purposes are motive, opportunity, intent, preparation,

---

[20] *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015).

[21] *Id.*; *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011).

[22] *See United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995).

[23] *United States v. Treff*, 924 F.2d 975, 981 (10th Cir. 1991) (citing *United States v. Record*, 873 F.2d 1363 (10th Cir. 1989)).

[24] *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993).

[25] *United States v. Oles*, 994 F.2d 1519, 1522 (10th Cir. 1993) (quoting *United States v. Sasser*, 971 F.2d 470, 479 (10th Cir. 1992)).

[26] Fed. R. Evid. 404(b)(1)–(2).

[27] *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2010); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

plan, knowledge, identity, absence of mistake, or lack of accident.[28]  The enumerated purpose list is non-exhaustive.[29]  It is relevant if it tends to prove or disprove one of the elements necessary to the charged offense.[30]  The danger of unfair prejudice resulting from admission of the evidence must not substantially outweigh the probative value of the evidence under the balancing test of Fed. R. Evid. 403.[31]  The limiting instruction "must caution the jury to consider the evidence only for the limited purpose for which it is admitted and not as probative of bad character or propensity to commit the crime charged."[32]

### A.     Counts 6-10

As discussed above, the Court has concluded that Counts 6-10 are not properly joined with Counts 1-5 and 11-26.  Nonetheless, the Government argues that severance of Counts 6-10 would be futile, because of evidence of Counts 6-10 would be properly admitted either as inextricably intertwined evidence, or as Rule 404(b) evidence in a trial of the other counts.  The Court disagrees.

First, the Court finds no basis for the Government's argument that the evidence of Counts 6-10 is intrinsic, that is, inextricably intertwined, with the evidence concerning the other charges.  The Government contends that the ERISA-related charges and the post-indictment charges are intrinsic to the bank fraud charges because it is direct evidence of the bank fraud charges and/or inextricably intertwined with the explanation of how Defendant has over time used multiple banks, bank accounts, and fraud schemes to unjustly enrich herself to the detriment of others and the bank institution as a whole.

---

[28] Fed. R. Evid. 404(b)(2).

[29] *See United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014).

[30] *See* Fed. R. Evid. 401.

[31] *See United States v. Tan*, 254 F.3d 1204, 1211–12 (10th Cir. 2001).

[32] *Mares*, 441 F.3d at 1157.

But, as explained above, it is neither apparent from the face of the Superseding Indictment, nor from the Government's response to the motion to sever that there is overlapping evidence, much less inextricably intertwined evidence.  These are separate and distinct means of fraud, involving different periods of time, different transactions, and involving different companies.

The Government does not show that omitting evidence of the ERISA counts from the trial of the other charges, or vice-versa, would leave the jury with a confusing or incomplete picture of the pertinent evidence.

Nor does the Government show that the ERISA counts are part of a single criminal episode involving the other charges.  Counts 1-5 relate to fraudulent loans and extensions in 2006-2009; Counts 6-10 relate to ERISA violations in 2011-2012; and Counts 11-26 relate to post-indictment bank and wire fraud, as well as aggravated identity theft in 2014.

Alternatively, the Government argues that the ERISA charges constitute Rule 404(b) evidence of the other charges, and vice-versa.   While the Government discusses in general terms, how Rule 404(b) evidence is properly admitted to show a defendant's identity, modus operandi, lack of mistake or accident, knowledge, intent or motive, the Government offers little specifics as to how the ERISA evidence meets any of these Rule 404(b) criteria. Again, the Government points to evidence that there were checks from CDM's payroll account payable to Farmers Bank and to businesses owned by Defendant.  But the Government does not explain how that shows either intent or a motive to defraud Farmers Bank, or the other financial institutions, lenders or credit card company, nor how that shows either an intent or motive to commit aggravated identity theft.

The Government posits that the manner and means of the ERISA violations were similar to the other fraud charges.  It argues that Defendant embezzled ERISA funds and concealed the embezzlement by failing to file reports; and that Defendant defrauded banks and other lenders and financial companies by submitting fraudulent documents.   But those manner and means are dissimilar, although commonly motivated by the general criminal intent of diverting money for her benefit.  Moreover, the "same manner and means" is not a ground for admissibility under Rule 404(b).  Indeed, it smacks of propensity evidence (if she would steal from her employees, she would steal from the bank), which is prohibited by Rule 404(b).

**B.     Counts 1-5 and 11-26**

As explained above, Counts 1-5 and 11-26 are properly joined under Rule 8(a), because they are of the same or similar character.  Counts 1-5 charge bank fraud.  Counts 11-26 charge bank fraud, wire fraud relating to other lenders and a credit card company, and related aggravated identity theft, which was a means by which Defendant committed the bank and wire fraud.

Further, as discussed above, absent a specific *ex parte* showing that a joint trial of Counts 1-5 with Counts 11-26 would prejudice Defendant by confounding her ability to present separate defenses,  Defendant has failed to bear the heavy burden of showing she is prejudiced by joinder.  But the Court need not entertain such an *ex parte* showing from Defendant, for even if she could establish prejudice, severance would be futile because evidence of Counts 1-5 would be admissible in a trial of Counts 11-26 and vice-versa.

The Government argues that evidence of Counts 1-5 and 11-26 would be mutually admissible, because the evidence is intrinsic, that is inextricably intertwined.   The Court disagrees.  Counts 1-5 charge bank fraud with respect to loans and other transactions involving

13

Farmers Bank in 2006-2009. In contrast, Counts 11, 13, 17, 23 and 25 charge bank fraud concerning three other financial institutions, not Farmers Bank. And, the latter charges relate to Defendant opening new bank accounts in these other institutions in 2014, by using social security numbers not assigned to her, as well as Defendant engaging in a check kiting scheme in 2014, involving banks other than Farmers Bank. There is simply no showing that any of the evidence Counts 1-5 overlaps with evidence of Counts 11-26. Nor is there any showing that omitting evidence of Counts 1-5 in a trial of Counts 11-26 or vice-versa would confuse the jury or leave an incomplete picture.

The Government alternatively argues that evidence of Counts 1-5 and 11-26 is mutually admissible as Rule 404(b) evidence. Under the first Rule 404(b) factor, "if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b)."[33] The party offering Rule 404(b) evidence has the responsibility to "precisely articulate the purpose" for which the evidence is to be admitted.[34] The trial court must also specifically identify the proper purpose for which it is admitted.[35] There is an exception to this requirement where the Rule 404(b) purpose of the evidence is apparent from the record.[36]

Moreover, evidence is relevant under the second factor if it "tends to prove or disprove one of the elements necessary to the charged offense."[37] The prior acts need not be identical, but must share "similarity with the charged crime" and be sufficiently "close in time and similar in

---

[33] *United States v. Irving*, 665 F.3d 1184, 1211 (10th Cir. 2011) (quoting *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009)).

[34] *United States v. Herder*, 59 F. App'x 257, 265 (10th Cir. 2003); *United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994); *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985).

[35] *Kendall*, 766 F.2d at 1436.

[36] *Herder*, 59 F. App'x at 265; *Birch*, 39 F.3d at 1094.

[37] *United States v. Mares*, 441 F.3d 1152, 1156–57 (10th Cir. 2010).

method" to the charged crime.[38]  The Tenth Circuit has "no absolute rule regarding the number of years that can separate offenses," but the time must be reasonable under the facts and circumstances.[39]  And, while Rule 404(b) evidence usually involves previous conduct, under certain circumstances, conduct subsequent to the offense charged is admissible.[40]

While the Government again offers a general discussion of the laundry list of proper grounds for admission of evidence under Rule 404(b) in its notice, it does offer some specific purposes of the evidence that establishes at least one proper ground for admission.  The Government argues that after engaging in the bank fraud that is the subject of Counts 1-5, and after being indicted for such, Defendant found it more difficult to operate her businesses as her financial situation deteriorated.  This, the Government posits, was Defendant's motive for engaging in the conduct charged in Counts 11-26–aggravated identity theft to fraudulently open new bank accounts, and to check kite in those new accounts.  Motive is defined as "the reason that nudges the will and prods the mind to indulge the criminal intent."[41]  The Tenth Circuit has considered motive a proper purpose for admitting Rule 404(b) evidence in fraud cases.[42]

The Court agrees that the evidence of the bank fraud charged in Counts 1-5 tends to establish a motive for the conduct charged in Counts 11-26, and thus is properly admissible under Rule 404(b).  In short, this establishes a logical connection between Counts 1-5 and 11-26, beyond a generic articulation of a common motive of diverting funds to her personal use.  It establishes her motive.

---

[38] *United States v. Morgan*, 936 F.2d 1561, 1572 (10th Cir.1991) (citing *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir.1989)).

[39] *United States v. Massey*, 48 F.3d 1560, 1571–72 (10th Cir. 1995).

[40] *United States v. Bonnett*, 877 F.2d 1450, 1461 (10th Cir. 1989).

[41] *United States v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978).

[42] *See United States v. Lambinus*, 747 F.2d 592, 597 (10th Cir. 1984) (considering motive as a proper purpose for admission of Rule 404(b) evidence in food stamp fraud case).

Further, the evidence in Counts 11-26 is relevant to Defendant's intent in the bank fraud charged in Counts 1-5.  While they are separate acts in separate periods of time, evidence that Defendant fraudulently opened bank accounts with the intent to kite checks is relevant to Defendant's intent in applying for bank loans, extensions of credit and a master loan agreement at Farmers Bank.  Not only do both groups of crimes involve fraudulent submission of information to credit or lending institutions, but also there are, in part, common businesses involved in Counts 1-5 and 11-26.

This evidence, in Counts 11-26, tends to establish a fraudulent intent in establishing in opening the new bank accounts, line of credit and credit accounts.   Defendant used several businesses to engage in the alleged bank fraud, wire fraud, check kiting, and aggravated identity theft in the post-indictment counts.  The post-indictment fraud scheme was employed with the intent to divert funds to her personal account.  Defendant used several businesses to engage in the alleged bank frauds in bank fraud counts.  The bank fraud scheme was employed with the intent to divert funds to her personal account.  Defendant used a common business, Action Real Estate Services, to allegedly commit crime in both the post-indictment counts and the bank fraud counts.[43]  Thus, the post-indictment counts are properly offered for the purpose of showing intent.

Under the third Rule 404(b) factor, the court must apply the Fed. R. Evid. 403 balancing test, whereby the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[44]

---

[43] For example, Count 2 charges bank fraud in connection with a loan to Action Real Estate; Count 25 charged bank fraud in connection with check kiting involving bank accounts of Action Real Estate.

[44] Fed. R. Evid. 403.

16

Even though "other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity."[45]  "Evidence is unfairly prejudicial only if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."[46]  The Tenth Circuit has explained that unfair prejudice contemplated by Rule 403 must do "more than damage the defendant's position at trial."[47]

As Defendant posits, there is some prejudice incumbent in Count 26, which charges that Defendant committed the felony crimes charged in Counts 17, 18, 23 and 24 while on pretrial release for the crimes charged in Counts 1-5.  But the Court finds that the probative value of Counts 11-26 outweighs any prejudice caused by a joint trial with Counts 1-5.   The jury will be instructed that Defendant is presumed innocent of all charges, no matter whether based on pre-indictment or post-indictment conduct.  The jury will be instructed that they must separately deliberate on each charged count, and determine whether the Government has proven all elements of each charged count beyond a reasonable doubt.  Further, nothing suggests that the jury will not be able to compartmentalize the evidence of alleged bank fraud occurring in 2006-2009 involving one bank, from evidence of other fraud in 2014 involving multiple financial institutions, lenders and credit institutions.  Thus, this Rule 404(b) evidence is admissible under the Rule 403 test as well.

## V.     Conclusion

---

[45] *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (internal quotation marks omitted).

[46] *United States v. McGlothin*, 705 F.3d 1254, 1266 (10th Cir. 2013) (internal quotation marks omitted).

[47] *See United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001).

Because the ERISA-related counts are not properly joined with Counts 1-5 and 11-26, the Court grants the motion to sever Counts 6-10.  Further, because Counts 1-5 and 11-26 are of the same or similar character, and because either would be properly admissible as Rule 404(b) evidence of motive and intent in the other, severance would be futile.  According, the Court denies the motion to sever Counts 1-5 from 11-26.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Sever Counts (Doc. 7) is **granted in part, and denied in part.**  Counts 1-5 and 11-26 are not severed and will be tried together.  Counts 6-10 are severed and will be tried in a separate trial from the other charges.

**IT IS SO ORDERED.**

Dated: November 14, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE