# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.

BRENDA WOOD,

    Defendant/Petitioner.

Case No. 14-CR-20065-JAR-1

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 242) and related Motions to Appoint Counsel (Docs. 243, 249, 252). The government has responded in opposition to the motion and moves to enforce the sentencing agreement between the parties and dismiss the motion.[1] For the reasons explained below, the Court grants the government's motion to enforce and dismisses Petitioner's motion without an evidentiary hearing, and denies as moot her motions to appoint counsel.

## I.  Background

Petitioner Brenda Wood was charged in a 26-count superseding indictment with various fraud-related counts, including bank fraud, theft from an employee benefit program, willful violations of ERISA, aggravated identity theft, wire fraud, and committing similar offenses while on release.[2]

---

[1] Doc. 247.

[2] Doc. 53.

On November 26, 2014, Wood was arrested for violating the conditions of her pretrial release and transferred to the custody of Corrections Corporation of America ("CCA"), now CoreCivic, for pretrial detainment.[3] Until March 2015, Wood was represented by counsel, Christian Cox, who visited her at CCA in person and talked to her by telephone.[4] The Federal Public Defender ("FPD") entered an appearance for Wood on March 17, 2015.[5]

On or about December 19, 2014, Jabari Wamble, the Assistant United States Attorney ("AUSA") prosecuting Wood's case, requested calls that she made from CCA, in anticipation of an upcoming detention hearing to be held on December 23, 2014.[6] CCA transferred the calls to a disk, which included sixteen conversations between Wood and Cox.[7] AUSA Wamble produced the calls on the disk to the FPD pursuant to this Court's February 2, 2018 order.[8]

Wood claims the government also obtained six video recordings of her meetings with Cox at CCA.[9] She states that these recordings document meetings between February 20, 2014 and May 16, 2014.[10] The government acknowledges that it obtained videos from CCA in connection with a different criminal case that focused on drug and contraband trafficking inside CCA.[11] The government came into possession of the CCA videos on May 17, 2016.[12]

---

[3] Doc. 222 at 2–3.

[4] *Id.* at 4.

[5] Doc. 43.

[6] Doc. 222 at 9.

[7] *Id.* at 9–10.

[8] *Id.* at 10.

[9] Doc. 242 at 4; Doc. 222 at 1.

[10] Doc. 222 at 6.

[11] *See United States v. Black, et al.*, No. 16-20032-JAR, Doc. 278 at 66 (D. Kan. June 27, 2017).

[12] *In re CCA Recordings Litig.*, No. 19-2491-JAR-JPO, Doc. 784 at 13 (D. Kan. Mar. 3, 2021).

On August 8, 2016, Wood filed a motion under Fed. R. Crim. P. 16(E) and 41(g), asking this Court to order the government to identify any recordings of her legal communications in the possession of the government and to provide them to her.[13]

Wood subsequently entered into two separate plea agreements to resolve her case. On July 12, 2017, pursuant to a Rule 11(c)(1)(C) written plea agreement, Wood entered a guilty plea to Count 6 of the superseding indictment, charging theft from an employee benefit program, in violation of 18 U.S.C. §§ 664 and 2.[14] The parties proposed, as an appropriate disposition of the case, "an appropriate guideline sentence as calculated by the court."[15] On October 24, 2017, pursuant to a second Rule 11(c)(1)(C) plea agreement, Wood entered guilty pleas to Counts 4 and 25 of the superseding indictment, charging bank fraud in violation of 18 U.S.C. § 1344.[16] The parties proposed that Wood be sentenced to a 78-month term of imprisonment on Counts 4, 6, and 25, to run concurrently.[17] This Court found moot Wood's motion filed under Rules 16(E) and 41(g).[18]

In advance of sentencing, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSR").[19] The PSR determined that Wood's total offense level was 32, her criminal history category was I, and her advisory Guidelines sentencing range was 121 to 151 months' custody.[20]

---

[13] Doc. 107.
[14] Doc. 184.
[15] *Id.* at 3.
[16] Doc. 199.
[17] *Id.* at 3, ¶ 3(a).
[18] Doc. 197.
[19] Doc. 200.
[20] *Id.* at 35.

On May 30, 2018, Wood filed a motion to dismiss her case, claiming that the government's purposeful intrusion into the audio and video recordings of her attorney-client calls and meetings violated the Sixth Amendment.[21]

On August 6, 2018, the parties entered into a sentencing agreement, wherein Wood agreed to give up "any and all claims the defendant might assert regarding the recording of and/or production to the government of any video recordings of any attorney-client meetings and any audio recordings of attorney-client telephone calls, and/or any alleged prejudice to the defendant therefrom."[22] In exchange for this concession, the parties agreed to modify the second Rule 11(c)(1)(C) plea agreement's sentencing recommendation from a 78-month sentence to a 50-month sentence—effectively reducing her sentence to time served.[23]

On August 6, 2018, this Court sentenced Wood on Counts 4, 6, and 25.[24] This Court determined that the correctly calculated advisory Guidelines sentencing range was 121 to 151 months' imprisonment, but sentenced Wood to the agreed-upon 50-month term, followed by a five-year term of supervised release, based on the modified binding Rule 11(c)(1)(C) plea agreement and the recommendation of the parties.[25] Wood did not file a direct appeal. Wood was released from custody on August 8, 2018.

---

[21] Doc. 222 (citing *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995)).

[22] Doc. 236 at 1.

[23] *Id.*

[24] Doc. 237.

[25] Doc. 238.

On July 3, 2019, Wood timely filed the instant § 2255 motion.[26] She requests vacatur of her convictions based on the government's intentional intrusion into her attorney-client audio and video recordings. She also requests that this Court invalidate the sentencing agreement.

## II. Discussion

The government moves to enforce the sentencing agreement and dismiss the instant motion. The government argues that Wood's § 2255 motion falls within the scope of the claims she waived in the sentencing agreement because the motion is based on the very same claims she waived therein—"any and all claims the defendant might assert regarding the recording of and/or production to the government of any video recordings of any attorney-client meetings and any audio recordings of attorney-client calls, and/or any alleged prejudice to defendant therefrom." Wood asks the Court to hold her case in abeyance and grant an evidentiary hearing to determine if the evidence she purports to have supports her claim of a Sixth Amendment violation. Wood states that she "believes it does and has had access to more evidence since the signing of the sentencing agreement and her release in August 2018 to support her claims."[27] Wood does not identify what this evidence entails and requests counsel to represent her pursuant to Standing Order 18-3.[28]

---

[26] Doc. 242. Wood requested the Court hold her motion in abeyance until it issued a ruling in the *Black* case and investigation. Docs. 244, 245.

[27] Doc. 250.

[28] On July 17, 2018, Standing Order 18-3 appointed the FPD to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this District. The FPD, who represented Wood in her underlying proceedings and negotiated the Rule 11(c)(1)(C) binding plea agreement and subsequent sentencing agreement, did not enter an appearance on behalf of Wood or supplement her *pro se* § 2255 motion.

The sentencing agreement modified Wood's second Rule 11(c)(1)(C) plea agreement, which contained the following waiver provision often used by the United States Attorney's Office in the District of Kansas ("USAO") (the "standard plea agreements"):

> **Waiver of Appeal and Collateral Attack**. The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, her conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords her the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge her sentence, or the manner in which it was determined, or otherwise attempt to modify or change her sentence, in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by Rule 11(c)(1)(C). . . . *Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct*.[29]

This Court has previously held that defendants with standard plea agreements may rely on the so-called carve-out provision in the agreements to challenge their guilty pleas, but in assessing the claims, the Court must still consider the relevant controlling law for rendering a guilty plea involuntary.[30] In other words, the carve-out provision does not create an exception to the rule in *Tollett v. Henderson*, where the Supreme Court held, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is

---

[29] Doc. 199 at 11–12 (emphasis added).

[30] *In re CCA Recording Litig.*, No. 19-2491-JAR-JPO, 2021 WL 150989, at *9–13 (D. Kan. Jan. 18, 2021).

charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[31] Review of any challenge to a conviction obtained via a guilty plea is ordinarily confined to whether the plea was both counseled and voluntary; otherwise, collateral attack is foreclosed.[32] Thus, a defendant's unconditional and voluntary guilty plea constitutes a waiver of all non-jurisdictional defenses to the charge(s) to which she has pleaded guilty except: (1) due process claims alleging vindictive prosecution, (2) double jeopardy claims that are evident from the face of the indictment, or (3) claims that the statute of conviction is unconstitutional.[33] In applying this rule, the Tenth Circuit has noted that "a defendant can waive claims that even implicate a charge of government misconduct" unless such misconduct constitutes a matter of jurisdiction or due process that cannot be waived.[34]

The Court concludes that Wood's sentencing and binding plea agreements bar her collateral attack under § 2255. A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable.[35] The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.[36]

---

[31] 411 U.S. 258, 267 (1973).

[32] *United States v. Broce*, 488 U.S. 563, 569 (1989).

[33] *See United States v. DeVaughn*, 694 F.3d 1141, 1145–46 (10th Cir. 2012) (stating that an unconditional and voluntary guilty plea waives all non-jurisdictional claims except for constitutional due process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment); *Class v. United States*, 138 S. Ct. 798, 803 (2018) (holding that guilty plea by itself does not bar a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal).

[34] *United States v. Doe*, 698 F.3d 1284, 1293 (10th Cir. 2012).

[35] *United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003); *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001).

[36] *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement.[37] The Court construes the plea agreement according to contract principles and based on what defendant reasonably understood when he entered the plea.[38] The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant.[39] Here, Wood specifically waived the Sixth Amendment claims she now collaterally attacks. Wood agreed to give up "any and all claims the defendant might assert regarding the recording of and/or production to the government of any video recordings of any attorney-client meetings and any audio recordings of attorney-client telephone calls, and/or any alleged prejudice to the defendant therefrom."[40] Wood thus agreed to waive her intentional-intrusion Sixth Amendment claims that were raised in a motion to dismiss her indictment in exchange for an agreed-upon 50-month sentence in her binding Rule 11(c)(1)(C) plea agreement. Accordingly, the disputed issue clearly falls squarely within the scope of the waiver.

Next, the Court must consider whether Woods knowingly and voluntarily waived her right to collaterally attack her conviction or sentence. "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."[41] When deciding whether a waiver of collateral attack rights was knowing and voluntary, reviewing courts must consider

---

[37] *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328.

[38] *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1206 (10th Cir. 2004).

[39] *Hahn*, 359 F.3d at 1343.

[40] Doc. 236 at 1.

[41] *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis in original).

two main factors: "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and whether there was "an adequate Federal Rule of Criminal Procedure 11 colloquy."[42]

Here, both factors favor a finding that Wood knowingly and voluntarily waived her right to bring an intentional-intrusion Sixth Amendment claim in these collateral proceedings. In paragraph 13 of the plea agreement, Wood represented that she "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, her conviction, or the components of the sentence herein," with the exception of subsequent claims for ineffective assistance of counsel or prosecutorial misconduct.[43] Woods also acknowledged that she had sufficient time to discuss the plea agreement with counsel, that she read, understood, and agreed the plea agreement was true and accurate and not the result of threats or coercion, and "that she is entering her guilty plea freely, voluntarily, and knowingly."[44] In the sentencing agreement, Wood agreed to withdraw her motion to dismiss that raised intentional-intrusion Sixth Amendment claims stemming from the CCA recordings and "that all provisions of the instant sentencing agreement fall within the scope of the Waiver of Appeal and Collateral Attack set forth in section 13 of the parties' plea agreement."[45]

During Woods' sentencing hearing, the Court reviewed the sentencing agreement with her, noting that in exchange for Wood waiving her right to proceed to make certain claims and in consideration of her moving to withdraw her motion to dismiss, the parties agreed to modify the binding plea agreement to a term of 50 months, with all other terms of the plea agreement the

---

[42] *Hahn*, 359 F.3d at 1325.
[43] Doc. 199 ¶ 13.
[44] *Id.* ¶¶ 17, 18.
[45] Doc. 236.

same.⁴⁶ The Court also reviewed the terms of the plea agreement with Wood at her change of plea hearing. During the colloquy, Wood told the Court that she had read the written plea agreement, that she had reviewed it carefully with her counsel, and that she understood the consequences of pleading guilty to Counts 4, 6, and 25 under the plea agreement. The Court specifically reviewed the waiver provision of paragraph 13 of the agreement and explained that pursuant to paragraph 13, Wood was agreeing to give up most of her rights to appeal and to collaterally attack the conviction or sentence through a habeas proceeding. The Court asked if she understood, and Wood replied yes.

The language of the sentencing and plea agreements and plea colloquy at the plea hearing show that Woods knowingly and voluntarily waived her right to collaterally attack the Court's acceptance of her plea and her sentence. Wood has not argued, much less made a sufficient showing, that she did not understand or have questions about her waiver of collateral attack rights, which specifically included the claims she raised in her motion to dismiss. Wood's collateral attack waiver was voluntary, especially in light of the fact that she knew about, alleged, and withdrew the alleged Sixth Amendment violation that she now claims tainted her conviction and sentence.

Finally, the Tenth Circuit has identified several "components" courts should consider when deciding whether enforcing a plea agreement's waiver of collateral attack will produce a miscarriage of justice.⁴⁷ These components include whether a court relied on an impermissible factor such as race, whether ineffective assistance of counsel rendered the collateral attack waiver invalid, whether the sentence exceeded the statutory maximum, or whether the waiver is

---

⁴⁶ Doc. 248 at 22.

⁴⁷ *Hahn*, 359 F.3d at 1327.

"otherwise unlawful."[48] A waiver is unlawful if it "'seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings. . . .'"[49] Courts must consider "whether the waiver itself is unlawful because of some procedural error or because no waiver is possible," instead of the lawfulness of the sentence.[50] Defendant bears the burden of demonstrating the waiver results in a miscarriage of justice.[51]

Although she generally seeks to set aside the sentencing agreement, Wood presents no argument that the Court relied on race or some other impermissible factor to sentence her, or that ineffective assistance of counsel during plea negotiations rendered her waiver invalid. Wood's sentence of 50 months' imprisonment was less than one-half of the bottom of the advisory Guideline range and resulted in a sentence of time served.[52] While Wood claims to have additional evidence to present at an evidentiary hearing, nothing in the record suggests her collateral attack waiver seriously affected the fairness, integrity, or public reputation of the judicial system.[53] Wood's allusions to additional evidence of misconduct amount to conclusory assumptions rather than factual assertions.[54] Wood has identified no error barring her collateral attack waiver and enforcing the waiver will not produce a miscarriage of justice. The Court thus

---

[48] *Id.*

[49] *Id.* (citation omitted).

[50] *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007).

[51] *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

[52] Doc. 200 at 35.

[53] *Hahn*, 359 F.3d at 1327.

[54] *See MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (When presented with factual allegations, "a district court may only forego a hearing where 'the petitioners allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

grants the government's motion to enforce the sentencing agreement, and by extension, the binding plea agreement, and Wood's § 2255 motion is dismissed on these grounds.[55]

### III.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[56] If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[57] For the reasons stated above, the Court finds that Wood has not satisfied either standard and therefore denies her a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's motion to enforce sentencing agreement is granted; Petitioner Brenda Wood's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 242) is **dismissed**. Petitioner is also denied a COA.

---

[55] Even if the Court did not enforce the sentencing agreement, however, Wood's Sixth Amendment claim would be subject to dismissal under the rule in *Tollett v. Henderson* that a defendant who challenges her conviction by alleging pre-plea constitutional violations cannot allege independent Sixth Amendment claims. *In re CCA Recording Litig.*, No. 19-2491-JAR-JPO, 2021 WL 150989, at *9–18 (D. Kan. Jan. 18, 2021) (discussing 411 U.S. 258 (1973)); *see United States v. DeVaughn*, 694 F.3d 1141, 1145–46 (10th Cir. 2012) (holding that an unconditional and voluntary guilty plea waives all non-jurisdictional claims except for constitutional due process claims for vindictive prosecution and double jeopardy claims that are evident from the ace of the indictment); *Class v. United States*, 138 S. Ct. 798, 803 (2018) (holding that guilty plea by itself does not bar a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal).

[56] 28 U.S.C. § 2253(c)(2).

[57] *United States v. Park,* 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS FURTHER ORDERED** that Petitioner's Motions to Appoint Counsel (Docs. 243, 249, 252) are **denied as moot.**

**IT IS SO ORDERED.**

Dated: July 13, 2021

                                                      S/ Julie A. Robinson
                                                     JULIE A. ROBINSON
                                                     CHIEF UNITED STATES DISTRICT JUDGE